IN THE UNITED STATES DISTRICT
COURT IN AND FOR THE DISTRICT OF
DELAWARE

FILED

JUL 24 200...

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

DAIR CALEB #544657
             PLAINTIFF

VS.

CARL DANBERG, Commissioner.;
PERRY Phelps, WARdon.;
DAVID K. Holman, Maior.,
GWENDOLYN EVERETTE, Sgt.,
HAROLD TERHUNE, C/o.,
KRISTE KENTON. C/o.,

"THESE DEFENDANTS ARE BEING SUED
IN THEIR INDIVIDUAL AND OFFICAL
CAPACITIES." DEFENDANTS

COMPLAINT

CIVIL ACTION No. 08 - 458

# JURY TRIAL REQUSTED #

## 1. JURISDICTION & VENUE

(1) This is A CIVIL Action Authorized by 42 U.S.C. Section 1983
to Redress the Deprivation, "Under Color of State LAW,"
of the Rights SECURED by the Constitution Of THE
UNITED STATES. THE COURT has JURISDICTION UNDER 28
U.S.C. Section 1331 AND 1343 (A)(3).

Continued. . . . . . .

PLAINTIFF SEEKS DECLARATORY RELIEF PURSUANT to 28 U.S.C. SECTION 2201 AND 2202. PLAINTIFF CLAIMS FOR INJUNCTIVE RELIEF ARE AUTHORIZED by 28 U.S.C. SECTION 2283 & 2284 AND RULE 65. THE COURT HAS SUPPLAMENTAL JURISDICTION OVER PLAINTIFFS STATE LAW CLAIMS UNDER SECTION U.S.C. 1367 OF THE RULES OF FEDERAL CIVIL PROCEDURE.

2) THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE IS AN APPROPRIATE VENUE UNDER 28 U.S.C. SECTION 1391 (b)(2) BECAUSE IT IS WHERE THE EVENTS GIVING RISE TO THIS CLAIM OCCURRED.

## II. PlaintiFF

3) PLAINTIFF DAIR CALEB #544657, IS AND WAS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF DELAWARE IN THE CUSTODY OF THE DELAWARE DEPARTMENT OF CORRECTIONS. HE IS CURRENTLY CONFIND IN THE DELAWARE CORRECTIONAL CENTER IN SMYRNA, DELAWARE.

## III. DEFENDANTS

4) DEFENDANT CARL DANBERG, IS THE HEAD OF CORRECTIONS DEPARTMENT AND IS THE COMMISSIONER OF THE STATE OF DELAWARE. HE is LEGALLY RESPONSIBLE FOR THE OPERATIONS OF THE DELAWARE CORRECTIONAL CENTER AND FOR THE WELFARE OF ALL INMATES OF THAT PRISON.

Continued. . . . . . .

5) DEFENDANT PERRY PHELPS, is THE WARDEN OF THE Delaware DEPARTMENT OF CORRECTIONS AT the PRISON IN SMYRNA, DELAWARE. He is LEGALLY RESPONSIBLE FOR THE OPERATIONS OF That PRISON AND his Staff.

6) DEFENDANT DAVID K. HOLMEN, is a CORRECTIONAL OFFICER With the Rank OF MAJOR OF THE State OF DELAWARE AT the DELAWARE Correctional Center, Who At all times Mentioned in this Complaint Was ASSIGNED At the PRISON As SECURITY Cheif.

7) DEFENDANT GWENDOLYN EVERETTE, is a Correctional OFFICER OF The State OF DELAWARE DEPARTMENT OF CORRECTIONS Who, At all times Mentioned in this Complaint held the Rank OF Sgt. AND WAS ASSIGNED to DELAWARE CORRECTIONAL Center At building 22 M.H.U. ON The day OF Incidents.

8) DEFENDANT Harold TERHUNE, is a Correctional OFFICER OF THE State OF DELAWARE Department OF Corrections Who, At the time held the Rank OF Correctional OFFICER AND Was ASSIGNED At the DELAWARE Correctional Center At building 22 M.H.U. OF the day OF Incidents.

9) DEFENDANT Kriste Kenton, is a Correctional OFFICER OF THE State OF DELAWARE Department OF Corrections Who, At the time held the Rank OF Correctional OFFICER AND Was ASSIGNED at building 22 M.H.U OF the day OF Incidents OF all times Mentioned in this Complaint.

Continued......

(3)

10) Each Defendant is sued Individually and in his/her Official Compacity. At all times Mentioned in this Complaint each defendant "Acted Under the Color of State Law."

## III. FACTS

11) Defendant Carl Danberg Commissioner, And Perry Phelps Warden, was aware and approved Regulations, Rule, Customs, Procedures That allow Correctional Officers to work excessive amount of Overtime shifts for Months on end "Daily" which Created Complete "Deliberate Indifference" to the Plaintiff and for the protection and safty for Inmates and Correctional Staff. Officer Terhune defendant, was working excessive amount of overtime shifts Causing this defendant to be Mentally and amotionally Drained, Inpaired in Judgement which Resulted in Excessive Force apone the Plaintiff (Brutully attacked) Both of these defendants named where also on notice That Office Terhune defendant was under heavy Meds. Before and after the Incident Took place. Also defendant Warden Phelps has Continued allowing his Correctional Staff to Retaliate Against Plaintiff Even after being Found "not Guilty" by the Superior Court on all Charges and The Juey Found the officers attacked the Plaintiff. Yet Plaintiff is still being Punished Daily.
See Exhibits M

Continued......

(4)

Plaintiff was also placed into Super Max "Isolation" For
For 15 days On "3-19-07" Without any hearing, In
violation of Plaintiffs Rights of the Fourth Amendment.
See Exhibit __I__ . Date of Hearing.

12) DEFENDANT MAJOR DAVID K. Holman has Showed
Complete deliberate Indifferance to the Plaintiff
Who was Found "Not Guilty OF All Charges"
By a Superior Court jurey Of assoult In a detention
Facility. On EX-F . On a Correational Officer).
The hole Reason Plaintiff was Placed into Delawares
"Supermax Peison" were For the False Charges. When
In Fact, It was The Correctional Officers Who attack
Plaintiff in A Beutal Manner. See Exhibit E .
So Far Plaintiff has Suffered 15 days in the hole,
Transfered From Medium high to "Supermax Peison"
Which Plaintiff has been house For A Year. Even
After being Found not Guilty.
Defendant Said in his Letter to the Plaintiff, Stated
The Following:" You will Remain in Supermax As a
Resault of Your brutal attack on one of "My Officers"
In Your Letter your deffending your behavior. Please
Share that Information with your Legal Counsel,
"Not Me" See Exhibit E
It's Clear That Plaintiff has been For Guilty by this
Defendant who Continues to inflict punishment on
Plaintiff.

Continued . . . . .

(5)

It's Clear Major Holman Convicted Plaintiff, Sentenced Plaintiff AND was Completly Prejiced the Plaintiff without Due Process. "Plaintiff Continues To Suffer Retoliation".
SEE Exhibits G-H-J-Affidavit

13) DEFENDANT Sgt. Gwendolyn EVERETTE has also Shown Complete deliberate Indifferance by brutally Attacking Plaintiff with "PEPPER SPRAY" While Plaintiff was being Attacked by OFFICER TERHUNE (Which burns EYES AND Skin) Then Sgt. EVERETTE defendant, who Fully Conspired with With OFFICER TERHUNE AND OFFICER Kenton to Falsifie Documents / Statements to JUSTIFIE their Actions on Plaintiff. These defendants Were Also Cought by the Jury Lieing in Court about the Incident.    SEE Exhibits A-B-C-D-G
PLAINTIFF Affidavit, Attached Exhibit

14) DEFENDANT OFFICER Harold Terhune, brutally Attacked The Plaintiff Causing InJurys to the Plaintiff head, Face, hands, Eyes, Skin, AND Caused Mental and amotional Deress. This defendant Also Conspired with Sgt. EVERETTE, OFFICER Kenton to Falsifie Reports AND the Incident to try JUSTIFYing their illegal actions. This OFFICER Also FalsIly testiFied in Court about the hole Incident.    SEE Exhibits C-D-E-G-L

15) DEFENDANT OFFICER Kriste Kenton, did intentionally Conspire with the above two defendants (13-14) to FalsiFie documents, Statements AND testamoney to JUSTIFIE their illegal action apone Plaintiff.

Continued . . . . .

(6)

(16) Please Review all attached Exhibits in Support of Plaintiffs' Complaint. See Exhibits A-B-C-D-E-F-G-H-I-J-K-L-M

(17)   IV. EXHAUSTION OF LEGAL REMEDIES

Plaintiff used The Prison Grievance Procedures Available At the Delaware Correctional Center On 5-13-08. It was determend it was not a Grievable issue. Plaintiff Apealed to the Bureau Cheif With "No" Avail.

(18)           LEGAL CLAIMS

Plaintiff Reallege and incorporate by Reference Paragraphs 1-18.

(19) The Defendants have Showed Complete deliberate Indifferance to Plaintiff by using Excessive Force, Wanton and Infliction of Pain, Retalation, Ceual And Unusual Punishment, due Process violations, of of the Constitution of The Eighth Amendment and 14th Amendment.

(20) The Plaintiff has no Plain, Adequate or Complete Remedy at Law to Redress the wrongs described herein. Plaintiff has been and Will Continue to be irreperable Intured by the Conduct of All the defendants unless-

Continued.....

(7)

This Honorable Court Grants the decloratory and Temporary Injuction Relief which Plaintiff Seeks.

## PRAYER FOR RELIEF

(21) WHEREFORE, Plaintiff Respectfully prays that this Court enters judgment Granting Relief

(22) A Declaration That The Acts and Omissions described herein Violated Plaintiffs' Rights Under the Constitution and Laws of The United States.

(23) A temperary Injuction to order defendants to Remove Plaintiff From "Super Max" Security. Place Plaintiff back at his original Status and buildings, Order Agenst Defendant Perry Phelps Wardon At the Delaware Correctional Cente.

(24) Compensatory damages in the Amount of $70,000⁰⁰ agenst Each defendant, Jointly and Severally.

(25) Punitive damages in the Amount of $70,000⁰⁰ Agenst Each defendant, Jointly and Severally.

(26) A Jury Trial On All Issues Triable by Jury.

Continued.....

(27) Plaintiffs Costs in This Suit.

(28) Any additional Relief This Court deems Just, Proper, And Equitable.

Dated: 22-07-08

PAIR CALEB #544657
DELAWARE Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

## VERIFICATION

I have Read The Foregoing Complaint And hereby Verify that the Matters Alleged therein are true, Except as to Matters alleged on information and Belief, And, As to Those, I beleive them to be true. I Certify under Penalty of Perjury That the Foregoing is true and Correct.

Executed at Delaware Correctional Center in Smyrna, Delaware on 22-07-08 2008.

PAIR CALEB #544657

# EXHIBITS

(1) WITNSS INFORMATION (INVESTAGATION STATEMENTS).
EX- A AND B

(2) PAIR CALEB STATEMENT AFTER INCIDENT.
EX- C AND D

(3) PICTURES OF PLAINTIFF AFTER BEING ATTACKED by C/o's.
EX- E

(4) LETTERS FROM DEFENDANT DAVID K. Holman MAJOR.
EX- F

(5) GRIEVANCE'S FILED AFTER BY PLAINTIFF AFTER ATTACKED
BY CORRECTIONAL STAFF.
EX- G AND H

(6) DISCIDLINARY HEARING DOCUMENT (HEARING HELD AFTER
PLAINTIFF SERVED 15 DAYS OF ISOLATION WITHOUT
ANY DUE PROCESS OF LAW UNTIL AFTER THE
PUNISHMENT.) E
EX-I.

(7) DOCUMENT DENYING PLAINTIFF ANY EDUCATION, EVEN
AFTER BEING FOUND "NOT GUILTY".
EX- J

(8) PLAINTIFF STILL BEING HELD IN S.H.U (SUPER MAX) FROM
MAY 6, 2008 STILL AS OF AUGUST 2008 AFTER BEING
FOUND NOT GUILTY.                         CONTINUED....
EX- L
                    1. OF 2

(9) PRELIMANY HEARING DOCUMENT Show's C/o TERHUNE
DID SWING APON PLAINTIFF AND ALL OTHER C/o
LIEN IN THERE INCIDENT REPORTS.
EX- L.

(10) HAROLD TERHUNE MEDICAL FILES THAT SHOWS HE
WAS UNDER DRUG MEDICATION DURING INCIDENT.
EX- M.

## Crimes and Associated Information

| Weapon/Force Used | Police Assignment | Police Activity |
|---|---|---|
| Personal WeaponsHands/Feet | One-Man Vehicle/Uniformed Officer | Handling/Transporting/Custody of Prisoners |

### Victim - Suspect/Defendant Relationships

| Victim - 001 | Suspect/Defendant - 001 | Victim Offender Relationship |
|---|---|---|
| | PAIR, CALEB | Otherwise Known |

### Witness Information

| | | | | Sex | Race | Age | D.O.B. |
|---|---|---|---|---|---|---|---|

## Investigative Narrative

C/O Harold Terhune and Sgt. Everette were assigned to 22-C Tier on March 19, 2007, at approximately 1430 hour, 22-C-upper tier was outside for recreation time and a call for showers was given. Inmates, who wished to take a shower, lined up and entered the first outside slider, the outside slider was than secured, leaving other inmates in the yard to continue their recreation time. These procedures are set, enforced, and repeated on a daily basis. While the shower inmates were secured between the slider, Inmate Pair, Caleb #00544657, after finishing his game of one on one basketball with another inmate, approached the outer slider and began banging on the door. C/O Kenton, Kristie was the control pod offiicer whose assignment is to monitor and control the opening and closing of the sliders within her area. Once the area was cleared, the outer slider was opened and Inmate Pair entered. Once inside Inmate Pair confronted Sgt. Everette verbally concerning C/O Kenton's failure to reopen the outer slider. I/M Pair stated to Sgt. Everette,"Your officers want to play games. We'll play games". Due to his statement and his verbal assault toward Sgt. Everette, Inmate Pair was given the order to lock in by Sgt. Everette. Inmate Pair, enroute to the upper tier, continued to curse at Sgt. Everette. C/O Terhune overheard Inmate Pair, as C/O Terhune was returning down the upper tier walk. He met with Inmate Pair and voiced his concerns on the possible problems at hand. C/O Terhune then attempted to escort Inmate Pair to his cell. Inmate Pair pulled away and delivered several blows to the face and side of C/O Terhune's head. Inmate Pair's actions were observed by Sgt. Everette who immediately called a Code One on the radio. Inmate Pair had to be sprayed with capstun to cease his assault on C/O Terhune. Correctional Officer Harold Terhune had to be transported to Kent General Hospital in Dover for multiple bruising about the face and neck area. C/O Terhune also received a small laceration on his forehead just above the bridge of his nose and one to the outer corner of his left eye. Photos were taken of C/O Terhune, Inmate Pair and Upper C-tier where blood was found between cell 4 and 5 along the railing. Investigator MCGee interviewed all inmates on 22C upper tier inmates. Some were in their cells at the time, others stated that C/O Terhune grabbed inmate Pair with both hands around Pair's neck. These observations were found to be not true after interviewing C/O Terhune and Inmate Pair.

Prior to Inmate Pair and C/O Terhune's meeting on the upper tier, Inmate Pair voiced his intent by the stating to Sgt. Everette "Your officers want to play games! We'll play games." His conduct prior to the assault caused Sgt. Everette to order Inmate Pair to lock in. C/O Terhune unaware of the prior threat when he stopped Inmate Pair on the upper tier to get Inmate Pair to enter his cell and lock in.

### Statement of Victim 001 -

I was notifying inmate on the upper C-tier of medical calls when inmate pair began yelling at Sgt. Everette saying "Fuck you bitch!" I stopped and asked inmate Pair, "What was the problem?". Inmate Pair responded "Shut the fuck up!", with that I ordered inmate Pair to lock

| Reporting Officer | Pending Supervisory Review: |
|---|---|
| INVEST MCGEE  1 | |

## Statement of Victim 001 ▮▮▮▮▮ Continued

in his cell (C-U-3). I took hold of inmate elbow, inmate Pair began swinging wildly striking me in the head and face area. Sgt Everette responded to the upper tier as backup, inmate Pair was sprayed by myself and Sgt. Everette. Sgt Everette cuffed inmate Pair with no further incident.

## Statement of Suspect 001 - CALEB PAIR

I was walking up the stairs on the pod and I told the staff member that they need to stop playing games because they had locked us outside and wouldn't let us in to take a shower. The staff member said something that I don't remember what it was and I told him to shut up. That is when he stepped forward and grabbed me by the arms. I told him to let go of me and pushed him away. That is when he took a step forward with one arm raised. Before I knew what I was doing on reflex I stepped forward and dodge his punch and threw one of my own. Then I stepped back and he came at me, I realized I was totally committed so I began to exchange blows with the officer after a couple seconds of fighting I was sprayed in the face with pepper spray. I then stepped away with my arms raised and waited for the officer to try again. Then a female officer stepped in front of me and I put my hands down and let her cuff me. That was about it.

## Statement of Witness 001 ▮▮▮

Officer Terhune, Haroold went up stairs to tell inmates in C-U-8 and 10 that they had Dental appointments. While I was inside the building at the slider door inmate Pair Caleb #00544657 came through the door from the yard stating that he had been trying to get in but Officer Kenton, Kristie had let everyone in that was trying to take a shower just minutes before. I, ▮▮▮▮▮▮▮ had told inmate Pair that everyone who wanted a shower had already came in because I watched them before I myself came through with Officer Terhune and being as though he was not in the slider he didn't want to get in. Inmate Pair Caleb stated to me, "Your officers want to play games. we'll play games." Inmate Pair then went up the stairs where Officer Terhune was. I then stated to inmat Pair that he could lock in. Officer Terhune met inmate Pair at his cell CU3, when inmate Pair saw C/O Terhune approach him he started swinging Striking C/O Terhune several times in the face. I, Sgt. Everette who was down stairs called a Code One on the blue radio, and ran up the stairs. I proceeded to spray several bursts of capstun in Inmate Pair direction. I asked Inmate Pair did he realize what he did and he stated he didn't care. After inmate was sprayed by myself and C/O Terhune, Inmate Pair, Caleb #00544657 turned around and was handcuffed by me, Sgt. Everette. Backup responded and escorted inmate Pair inside to the interview room.

## Statement of Witness 002 ▮▮▮▮▮▮

I, ▮▮▮▮▮▮ was working C and D control pod, heard Sgt. Everette call a code one on c-wing. At this time I saw Inmate Caleb Pair sbi#00544657 swinging at C/O Terhune. I then observed Sgt. Everette going up the stairs with her capstun in her hand. I then saw Sgt. Everette spray her Capstun at Inmate Caleb Pair. I then observed Sgt. Everette handcuff Inmate Pair and secure him in the interview room on c-wing.

| Reporting Officer INVEST MCGEE 1 | | | Pending Supervisory Review: | | |
|---|---|---|---|---|---|
| Detective Notified INV MCGEE | | Referred To | | | |
| Solvability Factors | ☐Witness ☒Suspect Located | ☐M.O. ☐Suspect Described | ☐Trace Stolen Property ☐Suspect Identified | ☒Suspect Named ☐Suspect Vehicle Identified | Status Has Follow Up |

**ADMINISTRATIVE TRANSFER**

**INMATE STATEMENT**

I was walking up the stairs on the pod and I told the staff member that they need to stop playing games because they had locked us outside and wouldn't let us in to take a shower. The staff member said something that I don't remember what it was and I told him to shut up. That is when he stepped foward and grabbed me by the arms. I told him to let go of me and pushed him away. That is when he took a step foward with one arm raised. Before I knew what I was doing on reflex I stepped foward and dodged his punch and threw one of my own. Then I stepped back and he came at me (over

ATTEST _____

_____
Inmate Signature

19-03-07
Date

_____
Staff Signature   Date 3-19-07

Inmate refused to make a statement ☐

**DO NOT DUPLICATE. FORWARD ORIGINAL TO SECURITY SUPERINTENDENT'S OFFICE ONLY.**

Form# 228-B (Rev 11/97)

EX-C-B

exchange blows with the officer after a couple seconds of fighting I was sprayed in the face with pepper spray I then stepped away with my arms raised and waited for the officer to try again. Then a female officer stepped in front of me and I put my hands down and let her cuff me. That was about it.

EX-D





EX-E



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE SECURITY SUPERINTENDENT**
**MAXIMUM & MEDIUM-HIGH SECURITY**
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977
TELEPHONE: (302) 653-9261
FAX: (302) 659-6663

MEMORANDUM

TO:        I/M Caleb Pair #544657
           SHU 19

FROM:      Major David K. Holman

DATE:      May 23, 2007

RE:        Your Letter of 5/7/07

---

You will remain in SHU as a result of your brutal attack on one of my officers.  In your letter, you are defending your behavior.  Please share that information with your legal counsel, not with me.

DKH/cf

xc:     File

EX-F



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**BUREAU OF PRISONS**
245 MCKEE ROAD
DOVER, DELAWARE 19904
Telephone: (302) 739-5601
Fax: (302) 739-8221

## MEMORANDUM

TO:        Caleb Pair (SBI# 544657)
                James T. Vaughn Correctional Center

FROM:    Rick Kearney    R.K.
                Bureau Chief – Prisons

DATE:    July 14, 2008

RE:        **Correspondence Dated 06/07/08**

      I received your letter dated June 7, 2008 in which you request to appeal grievance number 159141. That complaint has been determined to be non-grievable by the Institutional Chairperson.

RK:csd
xc:    Perry Phelps, Warden – JTVCC
       File

EX-G-0

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

**Date:** 05/22/2008

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** PAIR, CALEB | **SBI#** : 00544657 | **Institution** : DCC | |
| **Grievance #** : 159141 | **Grievance Date** : 05/13/2008 | **Category** : Individual | |
| **Status** : Non Grievable | **Resolution Status :** | **Resol. Date :** | |
| **Grievance Type:** Classification | **Incident Date** : 03/19/2008 | **Incident Time :** | |
| **IGC** : Dutton, Matthew | **Housing Location :** Bldg 19, Upper, Tier B, Cell 5, Single | | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:**  On March 19, 2007 around 2:30 pm I was assaulted by officer Harold Terhune, forcing myself to defend myself resulting in injury to myself and officer Terhune.  Officer Terhune, Officer Kriste Kenton, and Sergeant Gwendolyn Everette all lied and said I attacked him for no apparent reason.  Resulting in my self being placed in the SHU and being charged with assault in a detention facility.  On May 6, 2008 in trial in superior court a jury found me not guilty proving that it was self defense in response to an assault from officer Harold Terhune.

**Remedy Requested**  :  I want to be transferred out of the SHU and placed in the compound where I would be if I was not assaulted by officer Terhune and I request that an investigation be started into the assault committed by officer Terhune.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** NO

**Date Received by Medical Unit :**

**Investigation Sent :**

**Investigation Sent To  :**

**Grievance Amount :**

EX-6-1

**DCC  Delaware Correctional Center**
Smyrna Landing Road
**SMYRNA DE, 19977**
Phone No. 302-653-9261

Date: 04/10/2008

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** PAIR, CALEB | **SBI#** : 00544657 | **Institution** : DCC |
| **Grievance #** : 155528 | **Grievance Date** : 04/01/2008 | **Category** : Individual |
| **Status** : Non Grievable | **Resolution Status :** | **Resol. Date** : |
| **Grievance Type:** Staff Issues | **Incident Date** : 04/01/2008 | **Incident Time :** |
| **IGC** : Dutton, Matthew | **Housing Location :** Bldg 19, Upper, Tier B, Cell 5, Single | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On April 1, 2008, I was waiting in my cell for lunch when I noticed that I was the only inmate that did not get a lunch tray. Both cells on either side of me got theirs and I was just skipped. The officer was Sgt. Everette and she is involved in a case that I am in trial for. She is a witness against me and I don't think she should be working on the same tier as me I feel that she is discriminating against me and I was fed after everyone else which is not fair or should be allowed. Because of that my food was cold unlike everyone else's.

**Remedy Requested** : That she be written up and removed from the tier for messing with me.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** NO | **Date Received by Medical Unit :** |
| **Investigation Sent :** | **Investigation Sent To** : |
| **Grievance Amount :** | |

EX-H

DR #
10310112

Date: 4/5/07

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## DISCIPLINARY HEARING DECISION

☑ Class I (Major)     ☐ Class II (Minor)     ☐ Summary (24 Hour LOAP)

Inmate: Pair Cale O                                SBI#: 00  541657
Institution: Delaware Correctional Center    Hearing Date: 4/5/07    Time: 1036

Inmate Present: ☑ Yes    ☐ No

Reason (If No): _____

Violation: 200.201 Assault     200.203 DT/B     200.106, 2.05
Inmate Plea: Not Guilty
Inmate Statement: He swung at me first & I defended
my cell when he was taken I telling him to
shut up. He grabbed me. I told him to let
Witness Name: me go & he tried to hit me. And
Testimony: I hit him.

Witness Name: _____
Testimony: _____

Witness Name: _____
Testimony: _____

Decision: ☑ Guilty    ☐ Not Guilty    ☐ Further Investigation
Rational: Per reports inmate came guilty
of all charge. Sanction - to be
15 day isolation already in conf.

Sanctions: 15 (day) isolation already done
                    Hearing Officer's Signature _____

I understand that I may appeal the decision of the Hearing Officer (or Shift Supervisor in the case of a Summary Sanction) to the Commissioner of Correction or his designee. I must complete a Disciplinary Appeal Form within 72 hours immediately following the hearing and mail it to the DCC Hearing Office.

☐ I do intend to appeal.
☑ I do not intend to appeal.                inmate unable to sign

                    Inmate's Signature

## ORDER TO IMPLEMENT SANCTIONS

☐ Inmate does not wish to appeal          ☐ Appeal has been denied by Commissioner or Designee
☐ Sanctions have been modified            ☐ Time Limit (72 hours since hearing) for appeal has expired

Modifications: _____
It is hereby ordered to implement the sanctions or modified sanctions on Date: _____ Time: _____
Form 121 – May 30, 2003 – 2 pt. NCR  DACS

EX-1

DELAWARE CORRECTIONAL CENTER



FROM: Thomas Zanda
Master Correctional Counselor

TO Caleb Mair          DATE: 04/30/07

SUBJECT: I'm sorry, but there
are no educational services
in SHU. Please write to
education to see if you
can arrange something.

_____

_____

SIGNATURE: _____

EX-J

## IN THE COURT OF COMMON PLEAS
## FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) Preliminary Hearing  - August 6, 2007 |
| v. | ) |
| | ) Case Management No. 0707022039 |
| CALEB PAIR, | ) |
| | ) |
| Defendant. | ) |

**BEFORE:**

### HONORABLE ALEX J. SMALLS,

**APPEARANCES:**

> **MARK BUNITSKY, ESQ.**
> **Deputy Attorney General,**
> **on behalf of the State,**

> **MATHEW M. WARREN, ESQ.**
> **Assistant Public Defender**
> **on behalf of the Defendant.**

### PRELIMINARY HEARING TRANSCRIPT

**LINDA A. LAVENDER**
**Official Court Reporter**

2

# INDEX

| STATE'S EVIDENCE | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Edward McGee.......... | 3 | 7 | -- | -- |

$Ex-1$

3

**Court of Common Pleas**
**August 6, 2007**

Present: As noted.

     **MR. BUNITSKY:  Your Honor, the State would call**

**Investigator McGee to the stand.**

**STATE'S EVIDENCE**

**EDWARD MCGEE**

**having been first duly sworn, was examined and testified as follows:**

**DIRECT EXAMINATION**

**BY MR. BUNITSKY:**

  **Q.**  **Investigator McGee, you are an investigator with the**

**Department of Corrections, is that correct?**

  **A.**  **That is correct.**

  **Q.**  **How long have you been an investigator with the**

**Department?**

  **A.**  **A year and a half.**

  **Q.**  **And did you cause a Caleb Pair to be arrested in this case?**

  **A.**  **That is correct.**

  **Q.**  **And is Mr. Pair in the courtroom?**

  **A.**  **Yes, the defendant sitting with counsel.**

  **Q.**  **And you caused him to be arrested for Assault in the Second**

**Degree, Injury to a Law Enforcement Officer, essentially.**

  **A.**  **That's correct.**

Ex-2

McGee - Direct

Q.      And Assault in a Detention Facility, is that correct?

A.      That is correct.

Q.      When and where did those offenses take place?

A.      That happened inside the Delaware Correctional Center.

Q.      And that is located in New Castle County, State of Delaware?

A.      That is correct.

Q.      And the date was?

A.      March 19th of this year.

Q.      Okay.  And why was Mr. Pair arrested for those offenses?

A.      He was involved in a physical altercation with the guard, a correctional officer inside that facility, in Building 20T, 22 C Tier.

Q.      And could you indicate generally how this was started or how it started and/or was recorded?

A.      Well, at approximately at 2:30 or 1430 that afternoon C Tier upper level was out into the rec area where they have an hour rec.  At approximately 2:30 a rec was called for 15 minutes shower prior to coming back into the building.

Mr. Inmate Pair, Mr. Pair was outside playing basketball with another inmate, he did not make the call for showers at the 2:30 time. Other inmates were let back into the tier for their showers.

At that point inmate Pair banged on the window said he wanted access.  He was denied access because the other doors were being

*EX-3*

McGee - Direct

activated to let the previous inmates in for showers. He was then, he did

enter at a later time. He had words with the sergeant there. He was

ordered by the sergeant to lock in which is return to his cell. Verbal words

did exchange.

THE COURT: Just a moment, you have to speak into the

microphone, please.

THE WITNESS: I'm sorry.

Verbal words were exchanged between him and his sergeant.

He then went up to his second tier going to his room. Correctional Officer

Terrahoun because of the actions and the words that Inmate Pair were

relaying back to Sergeant Everett from the lower floor, he instructed

inmate Pair, through my investigation, that he had to lock in and he placed

his hands on inmate Pair to escort him into his cell. Inmate Pair pushed

his hand away, which led to a series of several to eight punches to Officer

Terrahoun's face and head area.

BY MR. BUNITSKY:

Q.    And the officer was on duty at the facility as a correctional

officer at that time?

A.    That is correct.

Q.    And could you describe the injuries that were suffered, if any,

by the correctional officer?

EX-4

McGee - Direct

A.    He had suffered two lacerations; one above the left corner of his eye, one above the bridge of his nose and he received several swollen bruises about the face and neck/jaw area.

Q.    And did you observe those injuries?

A.    Yes, I did.

Q.    Were they consistent with what the correctional officer advised you occurred that day?

A.    Yes, they are.

Q.    And was he treated for those injuries?

A.    Yes, he was.

MR. BUNITSKY:  May I have a moment, Your Honor?

THE COURT:  You may.

(PAUSE).

MR. BUNITSKY:  Your Honor, I'm going to offer this for identification, at least initially for the Court to take a look at it, I guess, and I would prefer not to offer it into evidence at this time.

BY MR. BUNITSKY:

Q.    Is that a fair representation of the injuries that you observed of the correctional officer shortly after the incident?

A.    Yes, it is.

MR. BUNITSKY:  I would respectfully request the Court to take a look at that.

EX-5

McGee - Direct

THE COURT:  Mr. Warren, any objection?

MR. WARREN:  No objection, Your Honor.

THE COURT:  All right.  State A for Identification.

(Whereupon, State's Exhibit A for Identification was

marked).

MR. BUNITSKY:  Your Honor, I don't believe I have any

further questions.

THE COURT:  Mr. Warren.

### CROSS-EXAMINATION

BY MR. WARREN:

Q.    Good afternoon, Investigator.

A.    Good afternoon.

Q.    Now, on March 19th Mr. Pair was outside playing basketball,

you said?

A.    Yes.

Q.    And at some point there was an argument with the sergeant?

A.    Yes, after he entered back into the building from the yard.

Q.    Okay.  So, he was denied access in the building at the 2:30

shower call and he began banging on the window?

A.    That's not correct.  All the inmates were told it was 2:30 for,

which is a 15-minute call before rec ends for the inmates who want to come

in to take a shower, to take a shower.  Those inmates entered, they have an      *Ex-6*

McGee - Cross

outer slider door, Your Honor, and an inner slider door; it's almost like a vestibule type area. Those inmates enter that vestibule area. Outside sliders were closed and they were let into --

Q.     If I could stop you right, was Pair one of those inmates or was he still --

A.     No, he was not. He continued playing basketball at that time.

Q.     Okay. Was he permitted to continue playing basketball?

A.     Yes, it is the inmate's option to come in at that point if they wish.

Q.     Okay, and sorry for interrupting, but go ahead and continue. The inmates were escorted inside the vestibule area?

A.     They were in the vestibule area, the outer door was secured and at that point, I believe, inmate Pair came in, he wanted to have access. The Control Pod Officer during normal procedures lets those inmates that are in the vestibule into the main building. Once the vestibule is cleared then they reopen the outer door to that others, which they did in his instance.

Q.     All right. And you said there were words between Mr. Pair and the sergeant?

A.     That's correct.

Q.     What sergeant was that?

A.     That was Sergeant Everette.

EX-7

McGee - Cross

Q.    Could you spell that for me?

A.    E-V-, let me look for a second to get you the correct spelling,

sir.

(Pause).

E-V-E-R-E-T-T-E.

Q.    So, Everette?

A.    That's correct.

Q.    Okay. And what was the context of that argument? What

words were exchanged?

A.    Inmate Pair entered and stated to Sergeant Everette that the

correctional officers are playing games and if they wanted to play games,

he'll play games.

Q.    Okay.

A.    And he proceeded to make remarks, cursing at Sergeant

Everette and then she ordered him to lock in, which is go to his cell.

Q.    And at that point there was an exchange of words and then

you stated Sergeant Everette then led him away, led Mr. Pair away?

A.    No, she gave him verbal directions to lock in, which means I

said to return to his cell which his cell was upper tier. He then proceeded

up the stairways to the second level where he was met by Officer

Terrahoun.

Q.    So he's escorted upstairs --

EX-8

A.    That's not correct.

### McGee - Cross

Q.    Pardon me.  He's ordered upstairs?

A.    That's correct.

Q.    And he goes voluntarily --

A.    That is correct.

Q.    -- when ordered?  So he was never at anytime physically escorted by Sergeant Everette?

A.    That is correct.

Q.    So he went up to upper tier, you said?

A.    He went to the second tier, which is --

Q.    Okay.

A.    -- where he's housed at.

Q.    So, upper tier.  And so Terrahoun, am I pronouncing that correctly?

A.    Terrahoun.

Q.    Terrahoun.  Officer Terrahoun was met Sergeant Everette upstairs, Mr. Pair upstairs?

A.    Officer Terrahoun, he was up on the second level for other reasons to inmates being let out from medical.  From my understanding he overheard the conversation and the confrontation between inmate Pair and Sergeant Everette.

Q.    So he was not called?

EX-9

McGee - Cross

A.      No, he was working the tier at the time.

Q.      Okay.  And when Mr. Pair arrived upstairs Officer Terrahoun was there and there was a conversation that preceded the incident or what was the initial contact?

A.      CO Terrahoun met or they met at a certain point and Officer Terrahoun asked what was the matter, words exchanged, and at that point from my investigation Officer Terrahoun wrapped his right or left arm and told him he had to lock in.  Inmate Caleb Pair pushed the officer away and at that point several blows were delivered to Officer Terrahoun's facial area.

Q.      Okay.  And was Sergeant Everette there at the time?

A.      Yes, she was on the lower floor.  She observed the confrontation on the upper tier; over the radio she called the Code and officers --

Q.      And if I can interrupt there, from Tier 1 is it clearly visible to see Tier 2?

A.      Yes, from the lower floor you can look straight up into the second tier.

Q.      Okay.  So Sergeant Everette witnessed this?

A.      That is correct.

Q.      Were there any other witnesses?

Ex-1(

### McGee - Cross

A.    Yes.  Pod Officer Kenton, who I stated was in control of the
sliders, that's the officer that opens those doors up on a higher level --

Q.    Okay.

A.    -- that looks down.

Q.    So Sergeant Everette is looking up at the incident and you
said Officer Kenton is on a higher level looking down at the incident?

A.    She's on a lower, she's higher than Sergeant Everette, but
lower than the actual tier floor.

Q.    Okay.  Approximately what distance away was Sergeant
Everette?

A.    Sergeant Everette from the doorway over would be about 10
to 15 feet then looking up, directly up.  So she would have approximately a
30-degree angle from the door looking up into the area where they were.

Q.    So about 15 feet up at about a 30-degree angle?

A.    Approximately.

Q.    And what about Officer Kenton?  Same questions.  About
what distance away was --

A.    Well, I don't know her exact location in the pod, but her
statement to me is when Sergeant Everette called for a code, she then
turned to her left and she could view on the tier the incident that happened
between --

Q.    About how far away is that pod away from the incident?    EX-11

McGee - Cross

A.    There is a glass shield so conversation cannot be heard from the pod, and you have another walkway, so I would say approximately, rough guess, 30 to 40 feet.

Q.    Thirty to 40?

A.    Yes.

THE COURT:  Sir, you really need to speak into the microphone.

THE WITNESS:  Oh, I'm sorry, Your Honor.

THE COURT:  Thank you.

THE WITNESS:  I leaned back.  Approximately 30 to 40 feet roughly.

BY MR. WARREN:

Q.    Okay.  Same question, about what angle looking at the incident?

A.    Well, like I said I don't know exactly where she was --

Q.    Okay.

A.    -- in the observation pod, but if she was facing out into the yard she would have to do a complete 45-degree with her head to look onto C Tier.

Q.    Okay.  And Officer Kenton and Sergeant Everette were the only witnesses to this event?

EX-12

McGee - Cross

A.     I've interviewed inmates in the incidences and officers that arrived after the fact or just shortly after the incident.

Q.     Okay.  And did any inmates speak to witnessing the event?

A.     Yes, they did.

Q.     And what inmates were they?

A.     I have a list of inmates that were on the upper tier that I interviewed.  The lower tier was not interviewed because they were locked in and was unable to actually view the incident.

Q.     Okay.  You have their names?

MR. BUNITSKY:  Your Honor, I'm going to object to the specific names of the inmates. They are potential witnesses that -- They will get those in due time but at today's hearing I think their names --

THE COURT:  I understand that, but he's entitled to at least, you know, who witnessed the event.  If you base his decision to arrest this man with that, it might be a little bit superfluous.  But, I might give him some leeway.  Overrruled.

Well, let's move it along, Mr. Warren.

MR. WARREN:  All right.

THE WITNESS:  I'm sorry, Your Honor, I was -- here we go. This is a listing, Your Honor, of all the inmates that are on that tier.  It's rather lengthy.

EX-13

McGee - Cross

THE COURT:  The question is: how many persons did you interview?

THE WITNESS:  I interviewed approximately 20, roughly, about 20 people.

THE COURT:  Twenty people.

BY MR. WARREN:

Q.    Of those 20 people, did any of the inmates give you substantive information regarding the incident?

A.    Some did, yes.  Some were, I would say a stretch of the truth.

Q.    Okay.

A.    Due to the information I received from Officer Terrahoun and inmate Pair at the time.

Q.    Out of all the inmates you interviewed, were there conflicting stories about the incident?

A.    Yes.

Q.    So there's approximately 20 inmates interviewed and they gave conflicting stories.

And you looked at some pictures earlier, who took those pictures?

A.    I did, sir.

Q.    You did?  And how long after the incident were the pictures taken?

EX-14

McGee - Cross

A.    Some were taken directly after approximately maybe a half hour.

Q.    Okay.

A.    And then some were taken at a later time inside the hospital.

Q.    And you said at a later time, how much later?

A.    Approximately an hour and a half, maybe two.

Q.    Okay.  So, pretty contemporaneous.

Now, this tier that the incident took place on, are there surveillance cameras?

A.    No.

Q.    And this is Howard Young?

A.    No, Delaware Correctional.

Q.    Okay, DCC.  So there's no cameras on that tier?

A.    Not to my knowledge.

Q.    Are there any cameras in the building?

A.    Not to my knowledge.

Q.    Did you investigate that fact?

A.    No.

MR. WARREN:  If I could have a moment, Your Honor?

THE COURT:  You may.

(Pause).

MR. WARREN:  No further questions, Your Honor.

EX-15

McGee - Cross

THE COURT: Okay. You want to discuss with your client...

(Pause).

THE COURT: Mr. Warren, follow-up?

BY MR. WARREN:

Q.    Couple of follow-up questions, Investigator.

Do you know any of the contents of Terrahoun's conversation with Pair before the physical stuff began?

A.    It was stated to me --

(Pause).

Officer Terrahoun stated when inmate Pair came on to the upper tier, inmate Pair was talking to Sergeant Everette and, excuse my language, Your Honor, he was saying fuck you, bitch.

Officer Terrahoun walked up and his statement-- and he stated to me inmate Pair hey, buddy, what's wrong, what are you doing? And at that point inmate Pair told him to shut the fuck up. And at that time Correctional Officer Terrahoun tried to escort him back to his cell to lock in.

Q.    When Officer Terrahoun grabbed, made physical contact, grabbed my client, did my client, did any of the witnesses that you interviewed, did any of those witnesses state that my client said let go to Officer Terrahoun?

EX-16

McGee - Cross

A.      No, most of the, all the inmates said that they did not hear exactly what was said.  They said that Officer Terrahoun did grab him while, at least one to two said grabbed him by the arm.  Quite a few of the inmates stated that he was grabbed around the neck in a choke, which was not true.

Q.      Now, did any of the persons you interviewed state that Officer Terrahoun swung with his fist at my client, Mr. Pair?

A.      What was said by the inmates, said that when Officer Terrahoun grabbed inmate Pair by the arm that it was on.  And they did not specify who swung first.

Q.      Did any of the persons that you interviewed state that Officer Terrahoun at any time swung, not who swung first, but who threw a punch?

A.      Could you repeat that, please?

Q.      You said that, you don't recall or none of the inmates that you interviewed recalled who swung first, but my question is more to did Officer Terrahoun swing at all; did Officer Terrahoun throw a punch at all?  It doesn't matter who threw first, but at any time did Officer Terrahoun throw a punch?

A.      Yes, he did take defensive actions against the punches that inmate Pair was throwing at him.

EX-17

McGee - Cross

Q.    So the answer to that question it would be a yes, that Officer Terrahoun did throw a punch?

A.    Yes.

Q.    And I asked you this before, but I'll

THE COURT:  If you've asked it before I think we've covered it, you've already asked before, let's move to the next question.

MR. WARREN:  Could I follow-up on the video camera?

THE COURT:  All right.  Follow-up on the video camera.

BY MR. WARREN:

Q.    You said you did not investigate whether there are video cameras?

A.    There are cameras within the institution.  Now, to my knowledge there was no tape or anybody that was observing those cameras at that particular time.

Q.    Okay.  So to your knowledge there are not two cameras facing on either side, facing where the incident took place?

A.    That I'm not aware of.

Q.    You did not investigate that?

A.    What I --

Q.    You did not check in to see if there was video footage or --

A.    There were no video footages of the incident.

Q.    And you did not investigate it -- so you did investigate it?

EX-18

McGee - Cross

A.    Yes, I know there was not a footage of the incident.

Q.    How do you know there was no footage of the incident?

A.    Because cameras have to be monitored by persons in order to record.

Q.    Okay.  But previously in your previous testimony you said you didn't investigate as to, you didn't think there was even cameras in the building.

THE WITNESS:  Your Honor, the cameras that are in institution --

BY MR. WARREN:

Q.    You can speak to me.

A.    The cameras that are in the institution, if they are of a recording status have to be recorded manually of an incident.  If an incident is not known to be happening, it probably would not be recorded and in this case it was not.

Q.    But --

THE COURT:  I think he covered the point.

MR. WARREN:  All right.  One final question.

BY MR. WARREN:

Q.    You don't have any videotape of the incident?

A.    No, I do not.

MR. WARREN:  Okay.  No further questions, Your Honor.

EX- 19

21

MR. BUNITSKY:  No further questions, no further evidence.

THE COURT:  You may step down.

(Whereupon, the witness stepped down).

THE COURT:  Anything further, Mr. Warren?

MR. WARREN:  Nothing further, Your Honor.

THE COURT:  All right.  Mr. Pair, you are here charged on March the 19th, 2007, in the County of New Castle, State of Delaware with Assault in the Second Degree Involving a Law Enforcement or Correctional Officer, and Assault in a Detention Facility in that you were confined to the Department of Correction when this incident occurred.

Based on the testimony on the record and the physical evidence of the photographs submitted, I am satisfied the State has put forth sufficient evidence to indicate that in all probability each of the offenses occurred and you are in part responsible for the commission thereof.

Therefore, you are hereby held for the Superior Court on each of the offenses charge and the bail will be $5,000.00 secured on the Assault Second, $5,000.00 secured on the Assault in the Detention Facility.

Obstruct the cash, all right?

So ordered, Mr. Bunitsky.

MR. BUNITSKY:  Thank you, Your Honor.

MR. WARREN:  Thank you, Your Honor.

EX-20

THE COURT:  All right.

# CERTIFICATE OF REPORTER

I, Linda A. Lavender, Official Court Reporter of the Court of Common Pleas, State of Delaware, do hereby certify that the foregoing is an accurate transcript of the testimony adduced and proceedings had, as monitored and electronically recorded, in the Court of Common Pleas, in and for New Castle County, in the case therein stated, as the same remains of record in the Prothonotary's Office, New Castle County, at Wilmington, Delaware.

WITNESS my hand this _1st_ day of _April_, 2008.

Certificate No. 172-PS
Expiration Date:  Permanent

EX-21

UNITED STATES DISTRICT COURT
TO: CLERK OF THE COURT

FR: PAIR CALEB #544657                    DATED 22-07-08
   DELAWARE Correctional Center
   1181 Paddock Road.  S.H.U.
   Smyrna, De. 19977



           RE: COURT FILINGS.
   DEAR COURT Clerk,
           PLEASE be Advised I AM Sending The Following
   Documents For Filing before This COURT.

   (1)  T.R.O. (8 Copys)
   (2)  Six Month Account Statement / Application For Forma PAUPERIS.
   (3)  Complaint AND Attached Exhibits, Plus Summons. (8 Copys OF EACH)
   (4)  PLAINTIFFS Affidavit. AND Attached Exhibit. (8 Copys)
   (5)  Motion For Appointment Of Counsel.  (1 Copy)

   DATED 22-07-08                    _____
                                      PAIR CALEB #544657

NAME: Caleb Fair

NBI# 544 657    UNIT: 19

DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

*Office of the Clerk*
*United States District Court*
*844 N. King Street, Lockbox 18*
*Wilmington, DE 19801-3570*